United States District Court
Southern District of Texas
**ENTERED**
July 25, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDGAR FAYE HUNTER, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-00738 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
|     *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Edgar Faye Hunter filed this case under the Social Security Act, 42 U.S.C. § 405(g) and matching such information requesting review of the Commissioner's final decision denying her application for social security disability insurance benefits. Dkt. 1. Hunter and the Commissioner both moved for summary judgment. Dkt. Nos. 14, 15. After reviewing the record and the law, it is recommended that Hunter's motion be granted, the Commissioner's motion denied, and the case remanded for further administrative proceedings.

### Background

Hunter applied for disability benefits on October 10, 2014, alleging disability since April 21, 2014. The Commissioner denied Hunter's application at the initial and reconsideration levels. Dkt. Nos. 9-5 at 3, 9-3 at 4. Pursuant to Hunter's request, an Administrative Law Judge ("ALJ") held a hearing on April 11, 2016, at which Hunter and a vocational expert testified. Dkt. 9-3 at 48-67. On May 27, 2016, the ALJ issued a decision finding that Hunter was not under a disability. Dkt. 9-3 at 28-40.

The ALJ analyzed Hunter's claim pursuant to the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step 1, the ALJ found that Hunter did not engage in substantial gainful activity since her alleged onset date of April 21, 2014. Dkt. 9-3 at 30. At step 2, the ALJ found that Hunter had the following severe impairments: obesity, lumbar degenerative disc disease, status post laminectomy and fusion, cervical disc disease, and status post-surgical repair. At step 3, the ALJ found that Hunter's impairments failed to meet or equal a listed impairment for presumptive disability under the regulations. Dkt. 9-3 at 32. The ALJ found Hunter had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exertional limitations: sitting 6 hours, standing and walking 4 hours, lifting 20 pounds occasionally, lifting 10 pounds frequently, unable to climb ladders, ropes, or scaffolds, and able to perform occasional overhead reaching. Based on this RFC, the ALJ found at step 4 that Hunter could perform her past relevant work as a bank teller, payroll clerk, and customer representative. Dkt. 9-3 at 38. Accordingly, the ALJ found that Hunter was not under a "disability" as defined in the Act.

On October 6, 2016, the Appeals Council declined Hunter's request to review the ALJ's decision. Dkt. 9-3 at 4-8. Accordingly, the ALJ's May 27, 2016, decision became the final administrative decision for purposes of judicial review. Dkt. 9-3 at 28-40. Hunter then filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## **Standard of Review**

Section 405(g) of the Social Security Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.ed3 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal court to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has been defined as a reasonable more than a mere scintilla. *Id.* To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan,* 954 F.2d 289, 293 (5th Cir. 1992). The Commissioner applies a five-step sequential analysis to decide disability status. The claimant bears the burden of proof on the first four steps to establish that a disability exists. If successful, the burden shifts to the Commissioner, in step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 152 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts back to the claimant to show that she is unable to perform the alternative work. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with reasons stated in the ALJ's final decision. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Post hoc

3

rationalization for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery*, 332 U.S. 194, 196 (1947).

## Analysis

Hunter contends that the ALJ committed three major errors:[1] (1) failure to consider her torn rotator cuff; (2) failure to evaluate the side effects from her medications; and (3) finding her major depression to be non-severe.

**1. The ALJ properly considered all medical evidence of record.**

Hunter argues that the ALJ failed to consider her subjective complaints about her torn rotator cuff. Dkt. 14 at 7, at 10. An ALJ must consider all symptoms before she makes a finding about the claimant's RFC. 20 C.F.R. § 404.1529(a). But a claimant will not be found disabled on her subjective complaints alone. In evaluating symptoms, an ALJ must follow a two-step process. 20 C.F.R. § 404.1529. First, an ALJ determines whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §

---

[1] Hunter also asserts that the ALJ ignored her use of a walker when assessing her RFC. Dkt. 14 at 7. However, she did not develop an argument to support the assertion. The court find this assertion to be meritless, because the ALJ properly noted that her use of walker was not medically required. Dkt. 9-13 at 53.

Hunter also argues that the ALJ should have found her impairments met the requirement of Listing 1.04. Dkt. 14 at 5-7; 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04. She again did not develop this argument in detail. Such an assertion is meritless. To meet the requirement of Listing 1.04, a claimant must be unable to ambulate effectively. *Id.* The ALJ found that Hunter was able to ambulate effectively. Dkt. 9-3 at 32. Her finding was supported by substantial evidence. *See, e.g.,* Dkt. Nos. 9-15 at 19, at 36.

Hunter argues that the ALJ overlooked "at least one of" her pain stimulators. Dkt. 14 at 8. This argument has no merit. First, the ALJ noted concerns about the effectiveness of a pain stimulator. Dkt. 9-3 at 35. Second, pain stimulators are only remedies that an ALJ should consider in relation to evaluation of a claimant's pain. The ALJ properly considered Hunter's pain. *See, e.g.,* Dkt. 9-3 at 35.

404.1529(b). Second, an ALJ evaluates the intensity and persistence of the claimant's symptoms and determine the extent to which the claimant's symptoms limit her capacity to work. 20 C.F.R. § 404.1529(c). At this step, individual's statements about the intensity, persistence, and limiting effects of her symptoms will be considered, and an ALJ should evaluate whether the statements are consistent with objective medical evidence and other evidence. SSR 96-7p. An ALJ must include a discussion of *why* reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. *Id.* It is not sufficient for an ALJ to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.*

 The ALJ did not specifically discuss Hunter's incomplete tear of the right rotator cuff. However, she gave reasons why Hunter's alleged limitations relating to lifting and reaching were not supported by the record. Dkt. 9-3 at 33. Hunter's physical exams generally documented greater strength levels than what was alleged. Dkt. 9-3 at 37. Further, medical records consistently documented normal muscle strength and tone. A note from Dr. Shedden documented no muscle weakness; strength was noted at 5/5, with reflexes at 2/2. Dkt. 9-10 at 201. Records from St. Luke's Woodlands Hospital documented that Hunter's muscle tone was normal, and muscle strength was normal except in the right-hand flexors. Dkt. 9-16 at 9. A December 8, 2015 examination by Dr. Brazeal revealed that Hunter had an incomplete tear of right rotator cuff; but he further noted that "I gave her a subacromial injection with almost complete relief shoulder

5

pain."[2] Dkt. 9-14 at 63. On January 6, 2016, Dr. Adewumi suggested that Hunter had 5/5 muscle strength in all muscle groups of the upper and lower extremities. Dkt. 9-15 at 36. For these reasons, the ALJ properly concluded that Hunter's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. Dkt. 9-3 at 37. Hunter's claim that the ALJ failed to consider all medical evidence of record is without merit.

**2. The ALJ did not properly evaluate Hunter's complaints of medication side effects.**

Hunter contends that the ALJ omitted any discussion of her complaints of side effects from her medications. Dkt. 14 at 15. The court agrees, and for reasons explained below, this error was not harmless.

Side effects of medication a claimant takes to alleviate symptoms is a factor for an ALJ to consider when evaluating the intensity and persistence of that symptom. 20 C.F.R. § 404.1529(c)(3)(iv). Moreover, medication side effects *in themselves* could render a claimant disabled or at least contribute to a disability. *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000). Thus, when a claimant complains that medication side effects precludes her from work, an ALJ should seek medical evidence or make inquiries regarding whether those medication side effects might conceivably be disabling. At the very least, an ALJ should make a finding on a claimant's complaints regarding side effects, making it possible for a reviewing tribunal to know that the complaints are not entirely ignored. *Id.* at 554.

---

[2] Impairment that can be reasonably remedied or controlled by medication or treatment is not disabling and does not affect RFC. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir.1988).

The record contains numerous complaints of medication side effects. Hunter's function reports, disability reports, letter to the ALJ, and medication list all consistently detailed the types and amounts of medications she was receiving and the side effects she had. Dkt. Nos. 9-7 at 40, at 70, at 82-83, at 86, 9-8 at 14. She reported very limiting side-effects, including drowsiness, dizziness, memory problems, tiredness, and confusion. Dkt. 14 at 11-14. For example, she claimed that "[m]etaxalone 800mg muscle relaxant, causes severe headache, extreme sleepiness and fatigue;" and "[s]umatriptan succ 100mg . . . causes me drowsiness, fast heartbeat, anxiety, confusion. . . ." Dkt. 14 at 12-13. Although the ALJ concluded that Hunter's subjective complaints were not entirely credible, the ALJ did not make a specific credibility finding on Hunter's complaints regarding side effects. The ALJ simply stated that "[u]se of numerous medications was reported . . . with some issues with side effects noted," but such a statement is not a sufficient finding. Dkt. 9-3 at 32; SSR 96-7P ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). And it is not clear to this Court why such complaints were not credible.

Therefore, the ALJ failed to meet the requirements of 20 C.F.R. § 404.1529 and SSR 96-7p. Such an error is reversible, because the reported limitations resulting from these side effects could possibly preclude her from performing her past jobs as a bank teller, payroll clerk, or customer representative. Each of these jobs require a high degree of mental acuity. See *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (holding that

7

an error is harmless unless it is conceivable that the ALJ would have reached a different conclusion); *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that reversal and remand is required when the error affects the substantial rights of the claimant).

**3. The ALJ properly found Hunter's major depression non-severe at step 2.**

Finally, Hunter contends that the ALJ's non-severe ruling did not comport with the factual record. Dkt. 14 at 17. She supports her contention primarily with her own statements regarding the severity of her major depression. Dkt. 14 at 17-19.

At step 2, an ALJ determines the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520. An impairment can be considered not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.[3] *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir.1985). In determining whether a claimant's depression is severe, an ALJ should look to 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00. Paragraph B provides four criteria to be considered: (1) activities of daily living; (2) social functioning; (3) persistence, concentration, or pace; and (4) episodes of decompensation. The regulation also provides that if an ALJ finds limitations in the first three criteria to be mild and no limitation in the fourth criterion, the

---

[3] The ALJ consistently referred to 20 C.F.R. § 404.1520(d) as the test for severity. However, the Fifth Circuit held that a literal application of 20 C.F.R. § 404.1520(d) is inconsistent with the statutory language and legislative history of the Social Security Act. *Stone v. Heckler,* 752 F.2d 1099, 1104–05 (5th Cir.1985). Hunter has not challenged the ALJ's decision on this basis, so it is not necessary to resolve that issue here. However, on remand, the ALJ should take care to apply the proper standard under *Stone*.

8

ALJ will typically find the mental impairment to be non-severe. 20 C.F.R. §404.1520(d)(1).

The ALJ considered all four criteria in her opinion. Dkt. 9-3 at 31. First, the ALJ found that Hunter had mild limitation in daily activities, citing the function report where Hunter acknowledged participating in a variety of household activities, including laundry, ironing, and other cleaning tasks. Then, the ALJ found that Hunter had mild limitation in social functioning, again relying upon Hunter's function report that she worked well with authority figures and the public generally. The ALJ also found Hunter to have mild limitation in concentration, persistence, or pace, based on a function report in which Hunter stated that she could still handle some stress and was generally able to handle changes in routine; Hunter also stated that she was able to pay attention for approximately 30-60 minutes "sometimes." Finally, the ALJ found that Hunter experienced no episodes of decompensation. Since the ALJ found Hunter's limitations in the first three criteria to be mild and no limitation in the fourth criterion, she concluded that Hunter's mental impairment was non-severe.

The ALJ's conclusion finds ample support in the record. Hunter was diagnosed as "depressed, at least mild" by Dr. Hillner, her family doctor. Dkt. 9-12 at 20. On January 20, 2015, Dr. Hillner prescribed Hunter Sertraline, an anti-depressant drug. Dkt. 9-13 at 61. He also noted that "Mental Health Specialists are generally beneficial and are recommended to optimize care." *Id.* On the same day, he referred Hunter to Todd Maraist, a neurologist, for Hunter's headache, but he did not refer Hunter to any mental

health specialists. Dkt. 9-13 at 62. The evidence shows there was no more follow-up treatment by any psychiatrist or other mental health specialist. The only two opinions of the record that discussed Hunter's alleged depression were the reports provided by State agency consultants Dr. Wong and Dr. Marler. Dkt. Nos. 9-4 at 2-7, at 13-20. After reviewing the medical record, Dr. Wong determined that Hunter suffered mild limitations in activities of daily living, social functioning, and persistence, concentration, or pace, and had no episodes of decomposition. Dkt. 9-4 at 7. At the reconsideration level, Dr. Marler came to the exact same conclusion. Dkt. 9-4 at 20. The ALJ gave great weight to the two opinions. Dkt. 9-3 at 38. The ALJ reasoned that their findings were consistent with the lack of specialty treatment in the record, as well as the somewhat muted reporting of problems stemming from mental impairments in Hunter's function report. *Id.*

In sum, the ALJ correctly considered the four criteria provided in 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 in making the finding that Hunter's major depression was non-severe, and such a finding is supported by substantial evidence in the record.

## **Recommendation**

The ALJ's failure to make a credibility finding on Hunter's subjective complaints of medication side effects is a violation of 20 C.F.R. 404.1529(b) and SSR 96-7p. This legal error is not harmless, given the potential severity of those side effects. Accordingly, the court recommends that Hunter's motion for summary judgment be granted, and the case remanded for further administrative proceedings.

The parties have 14 days from service of his Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. See 28 U.S.C. § 636 (b)(1)(c); Fed. R. Civ. P. 72.

Signed at Houston, Texas on July 25, 2018.

Stephen Wm Smith
United States Magistrate Judge